This afternoon is 4-12-0-6-0-8, Dunham v. Honeywell show appearance of Lisa Corwin for the appellant and Stephen Heft. Is that pronounced correctly, sir? Pardon? Heft. Heft. Oh well, hey, I'm named Steigman. Everyone's got a right to be, have his or her name pronounced correctly. I'll try to… Heft. Ok. Mrs. Corwin, you may proceed. Thank you. May I please have the floor? Council? My name is Lisa Corwin, and I represent the plaintiff Larry Dunham in this case, and the jury verdict in this case cannot stand. I think that's undisputed and uncontested at this point. The verdict was inconsistent with the testimony and the evidence at trial, and the real dispute at this point is where do we go from here, and what are the alternatives, and what relief should be granted based on this inconsistent verdict? You realize that you've just made history. Oh, I have? The first time a plaintiff in an asbestos case has ever conceded anything. And I mean that in good spirits. Well thank you. The plaintiff has offered four different alternatives in our briefs, and actually at the post-trial phase, all the parties agreed, which also is probably something that doesn't happen very often in an asbestos case, but both defendants and the plaintiff filed post-trial motions saying a new trial would be proper, and that that should be one of the things that the court should consider allowing. And unfortunately, after the hearing on the post-trial motion, Honeywell has abandoned that position, and they have changed their tune here before this court, and have taken a very strong position, in fact, arguing that this court would be required, or the trial court would be required, to enter JNOV in its favor. And that is wrong, JNOV would not be required, and in fact, Honeywell's initial position where it asked for other relief, including a new trial, would be appropriate based not just on precedent from this court, but also from other appellate courts and the Supreme Court. So I want to start off, I guess, by letting the court know why I'm saying that it's wrong, and why the trial court was wrong in awarding JNOV. There are two cases cited by Honeywell for the proposition that JNOV is appropriate. Neither of those cases have any factual similarity to what we have here. One is called Kleiss, K-L-E-I-S-S, and the other is Kemner. I'll take Kemner first, it's a 5th district decision, and both of these cases involve property damage from chemicals. In the Kemner case, the plaintiffs tried that case for punitive damages, and made no bones about it, that it was a punitive damages case. And basically, it appears to me from reading the decision, what they were trying to do was sustain a large punitive damages award with nominal compensatory damages, and the plaintiffs were awarded $1, and the appellate court said, no, you can't do that. But the plaintiffs in that case admitted there was no evidence that there was either direct or indirect evidence that these chemicals or these dioxins were on the plaintiff's property. So they were basically conceding causation in that case, and in Kemner, the appellate court said, in this case, on this record, the defendant, JNOV, is appropriate for the defense. Kleiss, which is a case from this district, this court in Kleiss had a similar situation where a plaintiff sued two neighboring, a plaintiff farmer sued two neighboring farmers, and the plants on the farm, and I've lived in central Illinois now for 16 years, and I'm still not an expert on plants, but from what I understand from reading this decision, the leaves on the plants were sort of curled up or turned in, and the courts, or the plaintiffs said, well, we think it's because of these chemicals our neighbors were spraying from a couple miles away. But this court went through the evidence at the trial court level and said, in fact, there was never any evidence linking the chemical to the damage, nor that it came from those particular individuals. And the court went through and said that, you know, one witness didn't know if chemical damage even caused the injury. The other one said there was no way to be sure whether it caused it. And then they had one expert who said that he thought it did, but he said that he had no bases for that opinion, and there was no reasoned analysis for any of his conclusions, and said he just based that on his experience. Counsel, let me ask you this. In Kleiss, of course, the jury specifically asked, if we find someone negligent, do we have to give them a monetary amount? How does that play into the situation we had in our case here today with respect to the instruction and their verdict? Well, I think it's a huge issue, and obviously a big difference between Kleiss and this case. We've never conceded that it would be appropriate to find Honeywell negligent but return no damages, but for whatever reason, the plaintiff in the Kleiss case agreed that you would not have to return damages and could still find the defendant's negligent in that case. It's very unusual, and the jury actually had that question and drafted a note to the court saying can we do this, and the plaintiff's counsel agreed that the jury could be instructed that they could find negligence and not return any damages. And in contrast, in this case, of course, we did have a jury note here too, but the jury note in this case said, if we want to find Honeywell negligent, and we want to find four plaintiffs against Honeywell, what verdict form do we use? So the note in this case was totally different than the note in the other case, and obviously the response by the court was totally different as well. So those are the cases cited by Honeywell for their proposition. Neither of them are factually similar. Neither of them would require this mandate that Honeywell is urging for JNOV, and I want to note, in this case, we had a negligence count and a conspiracy count, and there have been a number of recent decisions from this court on the conspiracy part. The negligence part is just for one of the mill negligence case, and JNOV on the negligence case was also awarded by the trial court inexplicably, really, because if you note, and it's in our case, the trial court said, there was evidence, which the jury could find, that would indicate the plaintiff was exposed to an asbestos-containing break manufactured by the defendant, Honeywell, so the motion will be denied. Nothing changed in the law or in the facts between the court denying that and then the court really inexplicably, I think he was just on a roll there, granting JNOV on everything and just threw the negligence count into the basket when it's completely inconsistent with the evidence, the testimony, and the law, and including statements made by the trial court itself. There are four alternatives that the plaintiff proposed, and I'll take the first two very quickly. We asked for additure or a directed verdict on compensatory damages, and I'm kind of taking those together because the directed verdict on compensatory damages would, in fact, based on our briefing, be the addition or the additor of the medical bills, because the evidence in this case supported a verdict for compensatory damages. It was undisputed that Mr. Dunham had mesothelioma. That wasn't something that was contested at the trial court level, so all of his medical bills came in uncontested. They were for care and treatment for that disease. He suffered damages. He testified as to those damages, and that came into evidence. So the counsel on that issue, the jury put a zero. The jury put a zero on compensatory. That's true, and that's why it's an inconsistent verdict. It's unexplainable because whether they were finding for the plaintiff on negligence or they were finding for the plaintiff on conspiracy or both, they would still have to return compensatory damages based on the evidence at trial. You could not use verdict form A and return a verdict for the plaintiff and then find that there was no compensatory damages based on the testimony and the evidence in the case, which gets us back to where I started, which is it's an inconsistent verdict and it doesn't make sense. The second, and where I spent the most time in my brief on, and what I think sort of where I started today, was the request for a new trial either on damages only, which of course is what the plaintiff would prefer rather than retry the entire case, or a new trial generally. And under the Supreme Court's decision in Hollis, they set out three factors to consider when you have a situation like this where the compensatory damages returned are inadequate based on what the testimony and evidence was in the record. And I believe all three of those criteria are met. The jury verdict is supported by the evidence on liability. Again, we went through in the briefing all the testimony and evidence on that point. Damages and liability are separate. There's no issue on that. There's no indication really that it was a compromised verdict. The jury's question to the court said that they intended to find for the plaintiff in this case and passed a note indicating that. So I think that a new trial on damages under Hollis would be appropriate. If the court disagrees and thinks a new trial generally would be appropriate, I would appoint this court to the Tyndall case, which is also a Fourth District decision, a decision of this court. The Theofanis case, and I don't know if I'm pronouncing that name right, and the Supreme Court decision in Manders, all of those cases support plaintiff's position in this case that a new trial should be returned. In Tyndall, this court found a new trial was appropriate because the jury returned zero compensatory damages, but found for the plaintiff a similar situation to what we have here. Right down to the fact that they put a zero in the blank. I think in Tyndall it was four different blanks. They wrote a zero in for compensatory damages. And this court said, no, we would have to find, to find for the defendant on liability, we would have to assume the jury ignored the instructions as to which verdict form to use, and ignored the instruction that there would be no need to consider damages if you were finding for the defense. And the court found based on that, that it was appropriate to award a new trial, and that was also the decision of the First District in Theofanis, which the Tyndall case was a Structural Act case. The Theofanis case is a medical negligence case. Same situation. The jury returned a verdict for the plaintiff, but returned zero dollars in damages. The trial court in that case did what the trial court did here, and flipped the verdict and said, well, really, we think it's, then it's a verdict for the defense. And the appellate court said, no, it is not a verdict for the defense, and that's the wrong thing to do. And the appellate court said, the fact that the jury chose a verdict form for plaintiff shows that there was proximate causation, and that the jurors all agreed that the negligence approximately caused the damages. And the trial court said the appropriate thing to do in that situation, sorry, the appellate court was to award a new trial for the plaintiff, and that's what happened. The Supreme Court in Manders, that was a car accident case, and in that case, the husband was awarded damages, but the wife on her loss of consortium claim was returned, a verdict was returned for zero damages for the wife, and the Supreme Court said, no, you retry the case as to both people, because it's just not clear what the jury intended by their evidence showing that there was an injury, and that she suffered damages. And when you have a situation where a party is injured, and they suffer damages, and that zero compensatories are returned, then the appropriate relief is a new trial. Because it's inconsistent, and it's an inconsistent verdict. And I would note, too, even under Clice, where the court found that JNOV was appropriate under those facts, there is statements to the effect that you do get a new trial if the damages awarded are manifestly inadequate, which in this case, they would be. And it's clear that the elements of damages have been ignored. Again, the jury was instructed on compensatory damages in this case, they would have to be the loss of which count the jury was finding for the plaintiff on, and they were obviously ignored. And the amount awarded bears no reasonable relationship to the loss suffered. Mr. Dunham has terminal cancer, that's obviously a substantial loss. This isn't a case where the jury could look at the testimony and evidence and think, he hasn't suffered any injury. And as I pointed out when I first started, it was uncontested that he had mesothelioma, which is a type of terminal cancer. So there was not just some sort of damages, there was a substantial amount of damages and there was a lot of testimony and evidence on that. Much of it uncontested, including the medical bills. So those are the four alternatives that the plaintiff is requesting. Like I said, when I started, I think the issue in this case is not whether... that the earlier trial would no longer be admissible. There would definitely be less evidence, because part of the evidence in the initial case involved the conspiracy claims. So there was testimony and evidence about Larry Dunham's, for example, he was a firefighter for 30 years. He got back, he's a Vietnam veteran, came back, started working right here in Springfield. And the John Hayhomes, which the court may or may not be familiar with, he had done some, a lot actually, of work over there. And so there was some testimony and evidence about Owens Corning, as a co-conspirator, and exposures he would have had to Owens Corning products, and what Owens Corning knew and didn't know. In addition to being exposed to Bendix breaks, there was evidence about Raybestos breaks. So we talked about Raybestos. There was a lot of testimony and evidence about what these companies were doing in the 30s, 40s, and 50s, into the 60s, and of course... So if it was limited to Honeywell only, what's the evidence that would then be presented? Well, it would be a strict negligence case against Honeywell for failure to warn, which is one of the counts that we had that this jury heard. And the testimony and evidence would be that Honeywell knew of the dangers of asbestos, knew you could get sick from working with their breaks. We have statements from Honeywell itself, for example, their material safety data sheet, which talks about the dangers of breathing asbestos and getting sick from that, and that Mr. Dunham was exposed to Bendix break dust, developed mesothelioma, and was never warned of those hazards. What was the evidence about his exposure to Bendix break dust? The evidence was that he worked as a firefighter for 30 years, and in those days, they actually lived initially in the firehouse, and so he was there 24 hours a day when he would be working those shifts, eating, drinking, whatever. He started off sweeping up the garage. They serviced all the vehicles, and that doesn't just include the fire trucks. I guess the fire department has things like regular vehicles, cars, trucks, pumpers, whatever, and they serviced all those vehicles, including break jobs, in the actual fire station and they did that for a number of years. In the late 70s, they moved to a different building where he wasn't stationed, but he was every day, and he testified, as did other firefighters, that they were in that building every day for training, for seeking maintenance on the vehicles. He will testify that he had the responsibility of taking trucks to this place and would say to the mechanics, we need a break job on this, and many times would stay while they did the work on the vehicle. And there was testimony that they had one guy that worked there that always used an air hose when doing the break jobs, which would put the fibers in the air. We had Exhibit 438, which is from the EPA, that talks about 16 million fibers being released into a mechanic's face from doing a break job that mechanics, their wives, their kids can get sick from it. Honeywell's corporate medical director testified that the type of asbestos fiber that's in there would cause mesothelioma, and that she knows of no safe level of exposure below which she won't get disease, which plaintiff's 116, the Federal Register, and other medical testimony we had also substantiated that. And Mr. Dunham's treating physician testified that any exposure he would have had to breaks would have been a cause and contributed to his development of mesothelioma. That would be some of the evidence. I see my light is up, so... Nope, it's not ready yet. Oh, I get to keep going? Yes. Okay. I have a question. Where are we now in the scientific evidence regarding other causes of mesothelioma? In North America, there is no known other cause of mesothelioma. Even the defense experts will say they know of nothing that causes mesothelioma. The defense position is... Other than? Other than asbestos, correct. What a defense expert will say, and what the people retained by the defense say at trial is, we think it's idiopathic. We just think that there are some people that just get meso that we don't know why they get it, they're just unlucky, I guess. But, you know, the cross-examination of that witness then involves saying, so even if a person's exposed to asbestos, you're still calling this an idiopathic mesothelioma. And some of them say, well, yeah, because like the expert in this case, Dr. Garibrandt, he testified that he believes breaks are safe and you can never get sick from being exposed to asbestos from breaks. So he's an expert for Honeywell. I mean, that's their go-to guy. He can be their expert in every case, right? It's not plaintiff-specific, it's just nobody can ever get sick. So if you have meso, but all you were exposed to was breaks, he would say, well, there's just, you know, that's idiopathic. He would say, Larry Dunham just happened to get mesothelioma. It's idiopathic. Okay, well, thank you, counsel. You get an opportunity to address this again in rebuttal. Okay, thank you. Okay, Mr. Haift. Please, the court. Counsel. Counsel. I'd like to clarify just a couple preliminary points. First, in Honeywell's post-trial motion, we didn't just ask for a new trial. We asked first for judgment NOV and then asked for the alternative new trial. So that's that point. Second, when the trial judge entered JNOV in favor of Honeywell on the negligence claim, it was based upon the fact the jury had come back with a verdict for no damages. So it wasn't inexplicable. There was a clear basis for the decision that was made. The point's been made that this was inconsistent with the denial of a directed verdict earlier. Well, the Illinois Supreme Court in the Ben Cleave case made clear that an interlocutory order such as a denial of a directed verdict motion can always be reconsidered. So there's nothing wrong with a judge, after sitting through the entire case, and after seeing the jury's verdict, deciding that it is now appropriate to enter judgment for Honeywell when he denied a directed verdict motion earlier. You asked the point I think goes to the core of the case, which is the jury question in this case. Because I understand that they asked for additure, which is a directed verdict, and for new trial on damages only. But in oral argument before the trial court in connection with the post-trial motions, Mr. Wilder from the plaintiffs said, quote, cutting through all of the lawyer talk, probably the right result would be a new trial on all issues. That's what the plaintiff is really seeking. And if we look at the Illinois Supreme Court's guidance on the point from the Manders case, the court says, quote, a verdict should be examined with a view to ascertain the intention of the jury in returning the verdict. And then in the Kleist case, this court expounded that, and said a court should exercise all reasonable presumptions in favor of a jury's verdict. The verdict is not legally inconsistent unless it is absolutely irreconcilable. So the question here is, if we look at the jury's verdict in this case, measured under the Kleist standard, is it absolutely irreconcilable? In Kleist, the jury, the appellate court, looked at the question from the jury, which said, can we find negligence but not damages? And that explained for the court in that case how the jury could have come back with what seemed to be an inconsistent verdict form, but was consistent with the jury's intent. In contrast, the plaintiff says the Tyndall case from the Fourth District. Well, in that case, there was no jury note. It was simply a one-count complaint. The fellow fell off a stepladder. And the jury came back with a verdict for the plaintiff with no damages. And the court there had no window into what the jury was intending, with which you could try and salvage that verdict. In this case, if you look at the question the jury put forward, it was, I've got it here just so I don't misquote it. The jury asked, having read the instructions, how should verdict form A be filled out in regards to the two claims against Honeywell? Example one, fine for Honeywell on negligence, but fine for Larry Dunham for conspiracy. Two, fine for Larry Dunham on negligence, but fine for Honeywell on conspiracy. With only one line for Honeywell in verdict form A, it is difficult to identify where to mark the specific claims. But that wasn't the only question, right? I'm sorry? That wasn't the only question from the jury. There was another question from the jury that said, if we want a fine against Honeywell and for the plaintiff, which one do we use or how do we mark it? There's a question along those lines as well. I think this is the one, Your Honor, but I may be mistaken. No, okay, all right. I apologize. That's all right. So what we have here is a jury clearly indicating that they're not able to work with the verdict form they were given because they think one claim should go for the plaintiff and one claim should go for the defendant. And in truth, the verdict form doesn't give them any option. You either find for plaintiff or you find for Honeywell. You can't find count by count. And if you look at the evidence that came into the case, you can see what the jury did. The jury found that the plaintiff in this case did not suffer any damage as an approximate cause of anything that Honeywell did. But as counsel referred to, over defense objection, there was a lot of evidence at trial about Honeywell's facilities, what Honeywell told its employees, what its employees' health was. That all came into this jury. And when you look at this jury question and you look at the verdict the way it's laid out, it's clear that the jury found for Honeywell a Mr. Dunn specific claim but decided that something that Honeywell did that came in throughout the course of the trial required punishment. Wouldn't the evidence of how Honeywell informed or failed to inform or provided information to its own employees have relevance to their understanding of whether they ought to be warning consumers of the brake product? That was the ruling of the trial court. We did not appeal, but we do object to that evidence. We think it's irrelevant what Honeywell did during the years of its employees in return to what warnings were given to consumers. I'm sorry, go ahead. My point would be, Your Honor, that that is the explanation of whether that evidence should have come in or shouldn't have come in. It did come in. But the trial judge said it should come in. Yes. It came in. Yes. Why isn't the logical inference, or one inference, is that Honeywell did bad stuff here. We need to give plaintiff something. So they did. I think that's... They just didn't do it in a way that makes any sense because of the verdict forms they were provided. I think, Your Honor, that is a possible explanation. And under that reasoning, the JNLV was proper because they awarded no compensatory damages to the plaintiff. And to the extent they sought to punish Honeywell, the evidence is insufficient to sustain that verdict. Plus, you can't award punitives without an award of compensatory damages. So I think what you said, based upon the jury question, is what happened. That is the way to rationalize this case, which makes it unlike Tyndall or unlike Theofanis, and likewise where with the jury question. Well, I guess, as part of my... the way I described the scenario, that evidence did come in and would make me think that a jury could logically think, gosh, they should have been telling these firemen in the city these things about brake linings. And they knew stuff, but they didn't tell. That affected Mr. Dunn. And the jury said zero damages. And I don't know what that means. I get where, and obviously that's what both of you are trying to... I think we're all struggling with the same... Yeah. What do you call it? The verdict form A, clearly it was made abundantly clear to the jury you only use verdict form A if you're going to fine for Mr. Dunn. I think what this case comes down to, if you look at Justice Cook's dissent in Tyndall and his opinion in Clice, and I really can't tell you any more than what he says in those two opinions. But you want us to ignore him when it comes to his justice cases, don't you? I'm not ignoring him, Your Honor. Okay. I respectfully disagree with you on that. Just checking. The irony did strike me. Well, he sometimes is led away from the path of righteousness. As we all are, I think, on occasion. So I think what this case comes down to, and I'm certainly glad to answer other questions, but I think what this case comes down to is this one. The issue for you is what to do with this verdict. Did the trial court proclaim that J&O be in light of the zero damages on the negligence claim, or should it be sent back on the negligence claim for trial of damages and liability? And I will steal your idea in terms of why it's not appropriate just to send it back for damages only, because the defendant will be prejudiced because the case on negligence only is far different than the case for the conspiracy involved. So you can't unmake what's been made and pretend it's not the same. I'll give you full credit, and I will steal that idea and say that is why you can't remand it only for damages. Isn't one of the key questions here, however it might be phrased, doesn't come down to how much confidence we can have that we understand what the jury was trying to say here, and if we can't have that confidence, should we send it back for a retrial? I think the answer is yes, Your Honor. And for me, again, I will fall back to Justice Cook, who said his confidence was when the jury looks at all this and says zero, they mean zero. When the plaintiff says, look at all the evidence of harm, he has mesothelioma, he has medical bills, he has pain and suffering, he has all of that harm. And certainly the jury had to see all that in front of it. So when the jury comes back and says, uses Form A that says zero damages, I'm confident they intended him not to have any damages in court. Now, whether they did that in a proper form or not, I'm not sure there was a proper form, given what seems to be their thought process. Of course, we could have had special verdicts, special interrogatories requested. We requested some and they were rejected, Your Honor. Really? And so... And whether or not there was negligence, for instance? I didn't... I'll say this with like an 80% degree of certainty because I didn't bring them with me, but yes, they did try and narrow it down by count, but that was rejected. So we were left with verdict Form A. Rejected on the grounds that you weren't entitled to it or rejected on the grounds that it wasn't in proper form? I think rejected on the ground that it wasn't... it didn't direct the verdict. So it was only piecemeal, and the judges didn't want piecemeal special interrogatories. Okay. So... So I think your question is right, Your Honor. It is a question of the confidence, and I think that goes back to, you have to look at the question from the jury and look at the zero and figure out when it comes to negligence claim, what was the jury saying? If you're confident they were saying as we believe they were saying and the trial judge believed they were saying, that there's no proximate cause here, there's no nexus between what Honeywell allegedly did and the plaintiff. And there is evidence to support that. Dr. Gerbrandt is an epidemiologist, and he testified that there have been a number of epidemiological studies done looking at brake workers and mesothelioma like there have been for other professions or occupations. And while in the other occupations, the epidemiology will show an increased risk from being exposed to asbestos, all of the epidemiological studies have been done showing no increased risk to mechanics who work with asbestos of getting mesothelioma. So we do have that evidence in the record to support the jury's verdict. I think I'm starting to repeat myself. So are there any questions, anything I haven't addressed? I see none. Thank you. Thank you, Your Honors. I appreciate your time. Ms. Corwin, any rebuttal? Sure. Just a couple of points that I disagree with counsel on. The court can reconsider. He started off by saying, well, yes, the trial court said there was evidence that he was exposed to asbestos-containing Bendix brakes. During the trial, during the plaintiff's case, they moved for a directed verdict on that, and it was denied. At the end of the plaintiff's case in chief, they moved again, and they moved for a verdict again at the end of all the evidence. And each time the court said no, there was sufficient evidence there. And there was nothing that changed in the law or the facts since the court made those findings as to conspiracy, this court issued the Rodarmal decision. And so the trial court changed his mind and changed his ruling based on the Rodarmal decision. But nothing came out from this court on negligence that would justify the court saying, this evidence is sufficient for the jury to base a verdict on, and then suddenly at the post-trial phase say, there is so little evidence, in fact, there's no evidence at all, JNOV for Honeywell on negligence. That doesn't make any sense. In Kleiss, this court said, judgment NOV should not be entered if there is any evidence, any evidence, together with a reasonable inference to be drawn there from, demonstrating a substantial factual dispute, or when the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive of the outcome. And here you have exactly that situation, where JNOV was granted in a case where not only is the plaintiff standing before you saying, yes, we had sufficient evidence, the trial court itself ruled three separate times that plaintiff had sufficient evidence. And then counsel said, well, yes, but we did have Dr. Garibrand, and that would support the jury's verdict. Again, based on Kleiss, which was citing Maple v. Gustafson, the Supreme Court, there was conflicting evidence in terms of the credibility of Dr. Garibrand and his opinions. This wasn't a situation where it was agreed that the plaintiff couldn't prove their case, such as you had in the Hemner case. And it wasn't a case like Kleiss, where we had an expert that didn't base his opinions on anything. So there was facts, there was evidence. Garibrand's opinions were inconsistent with other testimony and evidence in the case, and JNOV would not be appropriate given the facts and evidence here. So I don't think the court was correct to reconsider it and say, now all of a sudden, JNOV. Also, the only thing else I wrote down was the evidence on Bendix. He said, don't return it on damages only because the evidence will be different as to Bendix. It won't be different as to Bendix. When I was responding to Justice Steigman's question, I was pointing out the conspiracy part involved testimony and evidence about other companies alleged to be co-conspirators. The testimony and evidence as to Bendix and what Bendix knew and what they did when they were on notice, whether they warned, the statements they made and so forth, that evidence would be exactly the same as it was in conspiracy, as it would be in negligence. The conduct of that particular company, we just wouldn't be talking about how that conduct was also consistent with and in connection with what other companies were doing as well. So I disagree on that point, and that's why I think damages only would be appropriate because I don't think there's going to be a difference as to the conduct of Bendix in this case on negligence versus conspiracy. Thank you, Counselor. We'll take this matter to Justice. I just have a reference I'd like to provide. I have a question with the Special Envoy on its way. Is that all right if I put it here? Sure, that'd be fine. I think the ones that Bendix did are on C-10860 through C-10869. Okay. Thank you, Counsel. We'll take this matter under advisable decreases.